United States District Court
District of Massachusetts

```
_____
                                )
MIT Federal Credit Union,       )
                                )
          Plaintiff,            )
                                )
          v.                    )
                                )     Civil Action No.
Michael C. Cordisco             )     19-11297-NMG
                                )
          Defendant.            )
                                )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This case arises from the default of Michael C. Cordisco ("Cordisco" or "defendant") on a line of credit with MIT Federal Credit Union ("the Credit Union" or "plaintiff"). The Credit Union maintains that Cordisco breached an agreement between the parties by failing to make timely payments on a student loan and would be unjustly enriched if he were not required to repay it. On December 4, 2020, this Court entered an Order allowing plaintiff's motion for summary judgment (Docket No. 28) but denying all other pending motions filed by plaintiff (Docket Nos. 34, 50, 58). The Court, now, provides this Memorandum and renewed Order.

### III. **Background**

The Credit Union has its principal place of business in Massachusetts and Cordisco is a citizen of Connecticut and therefore the matter is before this Court on diversity jurisdiction.  On December 3, 2014, Cordisco executed a Graduate Private Education Line of Credit Agreement ("the Agreement") with the Credit Union in the principal amount of $195,000 ("the loan").  At that time, the Credit Union also purchased insurance on the loan from Reliamax Surety Company ("Reliamax") and authorized it to collect overdue payments on behalf of the Credit Union.  Reliamax subsequently became insolvent, however, at which point the Credit Union retained Cedars Business Services, LLC ("Cedars") to collect payments that were overdue under the loan.

The terms of the Agreement require Cordisco to "pay the Credit Union all advances, interest and other amounts due."  It identifies events of default which include the failure "to make any payment when due."  Upon default, the Credit Union is entitled to demand immediate payment of the entire balance of the unpaid debt.  Cordisco does not dispute that he has defaulted on the loan by failing to pay the amounts due and owing.

In response to the default, the Credit Union retained Rosen Legal, LLC ("Rosen") to send Cordisco two letters in the Spring of 2019, advising him that it had been retained to collect the debt and demanding a minimum payment. The letters also stated that the Credit Union intended to file suit if no attempt was made to cure the default.

Because there was no attempt to cure, in June, 2019, the Credit Union filed a complaint in this Court alleging that Cordisco had failed to pay the amount owed to it in the sum of approximately $185,000, plus interest, costs and attorneys' fees. Cordisco filed an answer pro se in August, 2019, in which he, inter alia, contended that the Credit Union had 1) failed to effect proper service of process and 2) assigned its interest in the debt to a third party, defeating its standing to bring this action to enforce the debt.

In or about March, 2020, Cordisco retained counsel and, soon thereafter, filed two motions to dismiss on the grounds of lack of standing by the Credit Union to pursue collection and improper venue pursuant to an arbitration clause. This Court denied both motions in July, 2020, three days after plaintiff had filed the subject motion for summary judgment.

IV.  **Motion for Summary Judgment**

    A.  **Arguments of the Parties**

    In the instant motion for summary judgment, the Credit Union responds to the defenses raised by Cordisco in his <u>pro se</u> answer and avers that there is no genuine dispute of material fact: Cordisco breached the Agreement and owes it the outstanding debt.  The Credit Union first asserts that it satisfactorily served process on the defendant, as evidenced by the Affidavit of Service ("AOS") submitted in this case. Plaintiff explains that the complaint was filed electronically, causing an electronic summons to be issued by the Court.  That summons was then sent to a process server who, according to his AOS, served the complaint and summons in-hand on Cordisco's wife.  The AOS identifies the wife by both name and physical description.

    Second, the Credit Union submits that it indisputably entered into a loan agreement which defendant has breached by failing to repay the loan, thereby entitling the Credit Union to recover the overdue amount.  It avers that, although it retained third parties to communicate with and collect the debt from Cordisco, the Credit Union has remained the sole creditor and owner of the debt.  The Credit Union provides documentary

- 4 -

evidence to support that position, including letters from Rosen
in 2019 identifying the Credit Union as the holder of the debt.

Defendant rejoins that the Credit Union 1) failed to effect
sufficient process on his wife, 2) has not authenticated the
subject Agreement and 3) is no longer the owner of the debt and,
thus, lacks standing to collect it.  With respect to service of
process, defendant states (without evidentiary support) that the
person served was not his wife but, instead, likely his dog
sitter or a close family member.  As for the authenticity of the
Agreement, defendant challenges, for the first time, the copy
provided by the Credit Union because it bears censorship marks
on the bottom left-hand corner of each page.  He explicitly
admits, however, that the parties entered into the subject
Agreement and that he defaulted on the subject loan.  In support
of his challenge, defendant provides only the first page of the
purportedly operative Agreement which is identical to the first
page of the Agreement proffered by plaintiff.

With respect to the current ownership of the debt, Cordisco
contends that three entities other than the Credit Union
purportedly own it, i.e., Cedars, Reliamax and Allied Account
Services.  Cordisco submits that because those entities, rather
than the Credit Union, contacted him with respect to the debt,

- 5 -

only they are entitled to collect it.  He has submitted, <u>inter</u> <u>alia</u>, an affidavit that those entities own the loan and letters from Cedars and Reliamax in which they request overdue payments. Although Cordisco disputes that payments are due to the Credit Union specifically, he does not contest the alleged amount due and owing pursuant to the loan, which the Credit Union asserts is $185,459.73 plus interest.

Plaintiff responds that Cordisco's challenge to the authenticity of the Agreement is disingenuous because he has relied on that same Agreement in his motion to dismiss.  With respect to ownership of the debt, plaintiff attacks the sufficiency defendant's rebuttal evidence.  The Credit Union first contends that many of the documents submitted by Cordisco actually support the Credit Union's ownership.  For instance, two of those documents are letters sent from Cedars to Cordisco identifying "MIT Federal Credit Union" as the creditor and providing a disclaimer stating, "THIS COMMUNICATION IS FROM A DEBT COLLECTOR."  Neither letter identifies Cedars as the owner of the debt.  The Credit Union further refutes defendant's challenge by proffering an affidavit from the Director of Operations of ReliaMax which states that "Reliamax is not the owner of the Loan and has never owned the Loan."

### B.   Legal Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)).   The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A fact is material if it "might affect the outcome of the suit under the governing law . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).   A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

If the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).   The Court must view the entire record in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. O'Connor v.

- 7 -

<u>Steeves</u>, 994 F.2d 905, 907 (1st Cir. 1993).  Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. <u>Celotex Corp.</u>, 477 U.S. at 322-23.

### C. Application

#### 1. Service of Process

Under Fed. R. Civ. P. 4(e), a defendant may be served with process by, <u>inter alia</u>, having a copy of the summons and complaint left at his "dwelling or usual place of abode with someone of suitable age and discretion who resides there."  When analyzing the sufficiency of such service, a court may view "a process server's affidavit of service . . . as prima facie proof of service." <u>English</u> v. <u>Bank of America, N.A.</u>, No. 13-cv-265, 2013 WL 6448672, at *5 (D. Me. Dec. 9, 2013).  To refute that proof, a defendant must offer strong and convincing rebuttal evidence which requires more than an affidavit by him simply denying service. <u>See</u> <u>Curley</u> v. <u>Radow</u>, No. 00-cv-10956, 2007 WL 2060015, at *5 (D. Mass. July 16, 2007) ("[A]n affiavit [alone] that merely denies service does not overcome a signed return of service.").

Here, the Court finds that defendant has failed to proffer convincing rebuttal evidence as to the sufficiency of service and, therefore, accepts the process server's Affidavit of Service as conclusive proof of service.  The AOS attests that Cordisco's spouse accepted service and provides her name and physical appearance.  Meanwhile, the only countervailing evidence is conclusory statements by Cordisco that no one at his residence was served with process, including his wife.  He provides no affidavit of his wife to support his denial. See Curley, 2007 WL 2060015, at *5 ("[A]n affiavit [alone] that merely denies service does not overcome a signed return of service.").  Accordingly, because defendant has failed to rebut the sufficiency of service, the Court finds that it was proper.

## 2. Breach of Contract and Standing

Under Massachusetts law, to prove a breach of contract, the plaintiff must demonstrate that: 1) a valid contract exists between the parties, 2) the defendant failed to perform its duties under that contract and 3) that failure caused the plaintiff damages. See Shaulis v. Nordstrom, Inc., 120 F. Supp. 3d 40, 54 (D. Mass. 2015) (quoting Guckenberger v. Bos. Univ., 957 F. Supp. 306, 316 (D. Mass. 1997)).

Here, the Court finds that defendant's evidence is inadequate to defeat summary judgment in favor of the plaintiff. There is no dispute that defendant executed a Line of Credit Agreement with the Credit Union and subsequently defaulted on his loan.  Although defendant now challenges, for the first time, the authenticity of the specific document proffered by plaintiff, the Court agrees with plaintiff that the challenge is disingenuous.  Indeed, defendant sought to enforce the arbitration clause contained in that same document in a prior motion.  In any event, defendant's admission makes clear that a valid agreement exists between the parties which defendant breached by failing to make payments pursuant to that agreement.

The closer question in this case is plaintiff's claim for damages, which depends on its standing to bring this claim. <u>See</u> <u>Lujan</u> v. <u>Defenders of Wildlife</u>, 504 U.S. 555, 559-61 (1992) (holding that, in order to establish standing, a plaintiff must show 1) an injury in fact, 2) a causal connection between the injury and the conduct complained of, such that the injury is fairly traceable to that conduct and 3) a likelihood that the injury will be redressed by a favorable decision).  That turns on whether the Credit Union has maintained ownership of the

debt, despite retaining third-party debt collectors, or whether the Credit Union assigned or transferred its interest therein.

Under Federal Law, a creditor is someone who "offers or extends credit creating a debt or to whom a debt is owed." 15 U.S.C. § 1692a(4).  A debt collector, on the other hand, includes

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts . . . owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6) (emphasis added); see also 209 CMR 18.02. The two are mutually exclusive, thereby enabling a situation whereby a creditor hires a debt collector to collect a debt but, nonetheless, maintains ownership of that debt. See In re JPMorgan Chase Mortg. Modification Litig., 880 F. Supp. 2d 220, 243 (D. Mass. 2012); see also Chiang v. Verizon New England Inc., 595 F.3d 26 (1st Cir. 2010) (distinguishing between the creditor/debt owner and its debt collectors).

Here, the Credit Union has met its initial burden of establishing that it is indisputably the owner of the subject debt.  It has proffered, inter alia, the Line of Credit Agreement entered into by the parties in December, 2014; letters from Cedars in 2018 seeking to collect the outstanding debt on behalf of the Credit Union; letters from Rosen in 2019 seeking

to collect the same on behalf of the Credit Union; Cordisco's
account history with the Credit Union between January, 2015 and
June, 2020, and an affidavit from the Director of Operations for
Reliamax stating that Reliamax never owned the subject debt.
Each submission makes clear that, although the Credit Union
hired debt collectors to communicate with Cordisco, it has
maintained ownership of the loan since it was extended in 2014.

Meanwhile, Cordisco has failed to respond to plaintiff's
proffer with admissible evidence that raises a material dispute
with respect to the ownership of the subject debt. See Fed. R.
Civ. P. 56(e) ("An affidavit or declaration used to support or
oppose a motion must be made on personal knowledge [and] set out
facts that would be admissible in evidence."). He has cited no
law preventing a creditor from suing to recover a debt after it
has retained debt collectors and has produced no admissible
evidence raising a triable issue with respect to whether the
Credit Union assigned or transferred its debt. He makes no
reference to any agreement between the Credit Union and third
parties explicitly assigning or transferring the debt.

Instead, Cordisco relies on his own, unsubstantiated
statements that agents of the third parties purportedly told him
that they have become the lawful owners of the debt. Compare

- 12 -

Cadle Co. v. Hayes, 116 F.3d 957, 961 n.5 (1st Cir. 1997)
(considering the self-serving statements in a party's own
affidavit because it was based on first-hand knowledge (emphasis
added)) with Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st
Cir. 1990) ("Hearsay evidence, inadmissible at trial, cannot be
considered on a motion for summary judgment").  He also proffers
letters sent to him by Reliamax and Cedars but they do not
identify the third parties as the creditor or owner of the debt.
To the contrary, two of the letters from Cedars explicitly
identify it as the debt collector and the Credit Union as the
creditor.

Upon review of the record, the Court finds no genuine
dispute that the Credit Union owns the subject debt and has been
damaged by Cordisco's failure to repay it which is redressable
by an award of damages.  Consequently, plaintiff is the proper
party to bring a claim for breach of contract and is entitled to
recoup the amount due and owing on the loan at the time it filed
this action, which this Court finds to be $185,459.73, plus
interest.  The Court will, accordingly, allow summary judgment
in favor of the plaintiff in that amount.

## V.   <u>Attorneys' Fees</u>

Under Massachusetts law, when a fee provision in a contract calls for "reasonable" fees, a court should consider, <u>inter alia</u>, the ability and reputation of the attorney, the time spent, the fees usually charged, the amount of money or property affected by the controversy and the results secured. <u>AccuSoft Corp.</u> v. <u>Palo</u>, 237 F.3d 31, 61 (1st Cir. 2001).  If, after consideration of such factors, the court finds that an award of the requested attorneys' fees would be inequitable or unreasonable, it can reduce or deny the fee award. <u>Id.</u> (quoting <u>U.S. For Use of C.J.C., Inc.</u> v. <u>Western States Mechanical Contractors, Inc.</u>, 834 F.2d 1533, 1549 (10th Cir. 1987)); <u>see also</u> <u>Trustee of Tufts College</u> v. <u>Ramsdell</u>, 28 Mass. App. Ct. 584, 585 (1990)).

Upon consideration of plaintiff's motion for attorneys' fees, the Court will deny it without prejudice because the motion is ambiguous and unsubstantiated.  The motion seeks fees "after a jury verdict is rendered in favor of MIT" which clearly has not happened and also purports entitlement to fees incurred "through the date of the change of counsel" which is unexplained.  Nor had defendant yet been afforded an opportunity to file an opposition.

Furthermore, the record makes clear that defendant has suffered financial hardship which has caused him to default on his student loan.  It indicates that at least some of plaintiff's fees were incurred to respond to defendant's ostensible concern about who owned the debt.  Under the circumstances, an award of attorneys' fees at this point is unwarranted.

**ORDER**

For the foregoing reasons,

- plaintiff's motion for summary judgment (Docket No. 28) is **ALLOWED**;

- plaintiff's motions to strike (Docket No. 34) and <u>in limine</u> (Docket No. 50) are **DENIED** as moot; and

- plaintiff's motion for attorney fees (Docket No. 58) is **DENIED without prejudice.**

**So ordered.**

\s\ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated December 10, 2020